**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**RENE GONZALEZ,**

    **Plaintiff,**

**v.**                                                                           **Case No.  8:04-cv-2148-T-TBM**

**JO ANNE B. BARNHART,
Commissioner of the United States
Social Security Administration,**

    **Defendant.**
_____/

**O R D E R**

The Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits. For the reasons set out herein, the decision is affirmed.

I.

Plaintiff was 41 years of age at the time of his administrative hearing. He stands 5', 5" tall and weighed 140 pounds. Plaintiff has a sixth-grade education, which he obtained in his native Dominican Republic. His past relevant work was as a dishwasher-kitchen helper and grocery-stocking clerk. Plaintiff applied for disability benefits in May 2002, alleging disability as of April 10, 2002, by reason of weakness and shortness of breath associated with fibrosis in the lungs, back pain from osteoporosis, and pain and weakness in the right hand. The Plaintiff's application was denied originally and on reconsideration.

The Plaintiff then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ").[1] In essence, Plaintiff claimed that he could no longer work at any job after tissue was surgically removed from the lower lobe of his right lung to test for cancer. According to Plaintiff, he lost 30 pounds[2] after the surgery and also lost his strength. He now claims to experience back pain, problems with his knee bending, problems with his bones, and fatigue. Additionally, Plaintiff testified that he cannot be in hot or cold weather and he has a "low mood." Plaintiff testified that x-rays revealed a shadow or inflamation in his lungs, and the medications are not helping him. Plaintiff indicated that he must use a breathing machine four times a day. Upon questioning, Plaintiff testified that he has not continued smoking, but he admitted to smoking a cigarette five days before the hearing.

Plaintiff testified that he becomes fatigued just tying his shoelaces. He indicated that the doctor ordered him to walk for at least half an hour, so he goes out and tries to walk and then sits down to rest and then walks more. Plaintiff estimated that he can sit for five or ten minutes. He testified that he cannot remain standing because of his back pain. He further testified that he is only able to lift about 15 pounds with his right dominant hand because he injured this hand and wrist when he was struck by a car 1998. Plaintiff estimated that he could lift about thirty pounds with both hands, but not too frequently because of his back.

Plaintiff speaks Spanish and he understands some English, but he has difficulty responding in English. According to Plaintiff, he spends a typical nine-hour day alternating

---

[1] Plaintiff testified at the hearing with the assistance of a Spanish speaking translator.

[2] Later in the hearing, Plaintiff testified that "I have lost about 70. . . ." (R. 288).

2

positions between reclining and standing.  By his estimate, he spends a half hour total during the day reclining or lying down.  See Plaintiff's testimony (R. 282-91).

The ALJ also took testimony from Allen Freeman, a vocational expert (hereinafter "VE"), who testified upon an assumption of a younger individual with a marginal education, with an exertional capacity in which gross manipulation is limited to up to the medium level with the right hand and no fast fingering, which is equivalent to the fine manipulation at fast pace with his right dominant hand; with avoidance of concentrated exposure to noxious dust, fumes, gases, smoke, and other noxious environmental lung irritants; and avoidance of concentrated exposure to extreme temperatures.  Upon this hypothetical, the VE opined that Plaintiff could not perform his past work, but he could perform a one-hand job in a temperature controlled environment such as garment sorter, a marker in the retail business, or usher.  Upon the additional limitations that such a person would be limited to lifting between fifteen and thirty-five pounds with both hands or limited to walking for half an hour, standing for ten minutes or less, sitting for five to ten minutes, that is, he needs to alternate positions at will, and must recline or lie down for half an hour during an eight-hour workday, the VE opined that Plaintiff could still perform the jobs of garment sorter and retail marker, assuming that Plaintiff could lie down during his lunch or dinner hour.  The VE further testified that considering the use of only the non-dominant arm to perform these jobs, the numbers of garment sorter and retail marker jobs would be reduced at least 10%, and the person's efficiency and the particular marking instrument may impact the availability of the marker job as well.  Additionally, the VE opined that with the garment sorter position, communication in English would not pose a big problem but such person would have to know how to read

minimal English for the marking job.³ The occupational base of those jobs would also be reduced by approximately 10% due to the fact that not all such jobs would allow the sit-stand option. He further opined that Plaintiff's ability to work only a 20-hour week would also not impact the availability of the jobs to him. See VE's testimony (R. 291-303).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are addressed herein as necessary.

By his decision of May 27, 2004, the ALJ determined that while Plaintiff has severe impairments related to moderate, chronic obstructive pulmonary disorder with interstitial lung disease and a history of asthma and was status post-traumatic residual neuritis in the right hand, he nonetheless had the residual functional capacity to perform a restricted range of up to medium exertional work. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to him in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 19-20). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable

---

³With regard to the need to communicate in English, the VE also testified that, "the placement would have to be selective in my opinion and experience" as to each position. (R. 300).

physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. See id. at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that

the claimant is not disabled. Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

### III.

The Plaintiff raises three claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The Commissioner erred in failing to adequately consider the Plaintiff's pain and other subjective symptoms;

(2) The Commissioner erred in failing to adequately consider whether the vocational expert's testimony was consistent with the Dictionary of Occupational Tittles, and to resolve any possible conflicts between the two; and

(3) The Commissioner erred by failing to fully or adequately consider the Plaintiff's subjective pain complaints.

Plaintiff's first and third claim are related and therefore are addressed together. By these claims, Plaintiff first urges that reversal is warranted because the ALJ failed to follow the Eleventh Circuit "pain standard" and the standards set forth in 20 C.F.R. § 404.1529 in addressing his nonexertional impairments related to dyspnea (difficult or labored breathing), fatigue, and pain. According to Plaintiff, the ALJ failed to properly assess the debilitating effects of these impairments. Plaintiff next urges that, while he alleged disability due to

6

dyspnea, shortness of breath, fatigue, back pain and knee pain, and weakness in right hand, the decision only credits him with severe impairments related to lung impairments and residual neuritis of the right hand and thus implicitly finds his musculoskeletal problems to be non-severe.  Plaintiff challenges this finding.  In his view, it is unsupported in light of the ALJ's failure to adequately consider the diagnosis of osteopenia (mild thinning of the bone mass, but not as severe as osteoporosis), the notations in the medical records documenting limited range of motion in his low back and cervical spine, and Plaintiff's testimony regarding back pain.  Plaintiff urges further that his pulmonary problems cause shortness of breath and lack of energy in addition to the environmental limitations found by the ALJ.  He also complains that the ALJ did not adequately consider the opinions of treating and consulting physicians because they both "found the Plaintiff to have limitations and/or signs and symptoms consistent with seriously impaired lung function."  At the very least, Plaintiff contends that the ALJ was required to recontact these doctors.  Finally, the Plaintiff contends that having failed to accurately determine his severe impairments and resulting limitations, the ALJ posed an inadequate hypothetical to the VE.

Initially, to the extent Plaintiff broadly complains that the ALJ failed to follow this circuit's "pain standard," the decision reflects otherwise.  Thus, the ALJ acknowledged "the undersigned must consider all symptoms, including pain, and the extent to which they can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p." (R. 16).  Although the ALJ did not expressly refer to the "pain standard," his reference to section 404.1529 reveals his understanding of the applicable standard, and a fair reading of the decision reflects his application of the standard.  See Wilson v. Barnhart, 284 F.3d 1219,

7

1225-26 (11th Cir. 2002). While the decision is not a model of clarity in this regard, I understand the ALJ's analysis to conclude that Plaintiff suffered two significant impairments, one pulmonary, the other musculoskeletal (hand/wrist) and that these conditions could give rise to the symptoms of which Plaintiff complained, but not to the degree alleged.[4]

I find further that the ALJ provided adequate reasons for rejecting Plaintiff's subjective testimony.[5] Here, the ALJ discounted Plaintiff's subjective allegations of disabling limitations based on a general lack of support in the medical record. (R. 17). With regards to Plaintiff's lung condition and alleged resultant fatigue and shortness of breath, the ALJ noted that his complaints were at odds with his testimony that his doctor told him to walk for half an hour. (R. 17). Moreover, in reviewing the medical record, the ALJ noted with specificity the records of treating pulmonologist, Dr. Carlos Rozas, which included reports that Plaintiff was "vastly improved" by corticosteriod therapy; his cough, wheezing and chest tightness had

---

[4]To the extent the Plaintiff claims the ALJ erred at step two in finding that Plaintiff's musculoskeletal (back) condition was not a severe impairment, I disagree. The ALJ here determined at step two that, "[t]he claimant's moderate chronic obstructive pulmonary disorder with post-operative lung disease and history of asthma, and post-traumatic residual neuritis in the right hand (status post surgery in 1998) are considered 'severe' based on the requirements in the Regulations." (R. 19). This finding was in accordance with controlling authority and does not require remand. See, e.g., Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987) (noting that, ". . . the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two."). The ALJ's consideration of the Plaintiff's subjective allegations related to limitations caused by his back condition are addressed above.

[5]Plaintiff is correct that, where an ALJ decides not to credit a claimant's testimony about [pain], the ALJ must articulate specific and adequate reasons for doing so or the record must be obvious as to the credibility finding. Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995); Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).

8

resolved; and his shortness of breath and dyspnea had decreased. The ALJ noted further that Dr. Rozas documented Plaintiff's self-reports of doing well, as well as x-rays and pulmonary function tests (post corticosteriod therapy) revealing some improvement. See (R. 14-15). Although Plaintiff is correct that consulting examiner, Dr. Robert B. Burchett, reported that he became "fairly dyspneic" with the minimal exertion required on examination, (R. 219), Plaintiff told Dr. Rozas only one week earlier that he had less shortness of breath and no dyspnea on exertion (R. 254). In addition, on his next visit to Dr. Rozas three months later, Plaintiff reported that he was doing well and he denied shortness of breath or dyspnea on exertion.[6] (R. 253). Thus, to the extent that Plaintiff complains that the ALJ gave too little weight to the functional significance of his dyspnea/shortness of breath and fatigue, I must conclude otherwise.[7] While Plaintiff undoubtedly has a history of lung problems, the record adequately reflects that the condition responds well to treatment and does not impose the extent of limitations claimed by Plaintiff.

---

[6]To the extent that Plaintiff challenges the weight accorded to the opinions of treating physicians or claims their opinions were "consistent with seriously impaired lung function," the record reveals otherwise. To this end, it is worth pointing out that Plaintiff does not challenge the weight accorded the opinion of any specific physician. Also unpersuasive is Plaintiff's conclusory allegation that the ALJ should have recontacted the (unnamed) treating physician or Dr. Burchett so as to develop a full record and accurate determination as to Plaintiff's lung disease. Although the regulations direct an ALJ to recontact a medical source where the evidence received from the source is inadequate, see 20 C.F.R. § 404.1512(e), other than setting forth the regulatory definition of "inadequate," Plaintiff fails to allege that the evidence before the ALJ was inadequate and I do not find to the contrary.

[7]To this end, it is worth reiterating that, even if the court finds that the evidence preponderates against the ALJ's decision, it may not reweigh the evidence or substitute its own judgment for that of the ALJ. See Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990); Bloodsworth, 703 F.2d at 1239.

The record also supports the ALJ's reasons for rejecting Plaintiff's claimed limitations resulting from osteopenia. While such was revealed by a bone density study and assessed on examination, see (R. 116, 147), and consulting examiner Dr. George M. Adams noted a slightly decreased range of motion in Plaintiff's cervical and lumbar spine, see (160), no physician, treating or otherwise, recommended any physical restrictions as a result of such. Moreover, as the ALJ noted, there is no evidence that Plaintiff required treatment for his back/neck condition,[8] Dr. Adams reported that Plaintiff only took Naprosyn for pain (R. 161) and Dr. Burchett reported that Plaintiff's range of motion in his cervical and lumbar spine was normal (R. 220-21).

Lastly, Plaintiff is correct that case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. See Pendley v. Heckler, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. Id. at 1562-63 (quoting Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980)). Notwithstanding this governing authority, Plaintiff's contention that the ALJ erred by not including in the hypothetical question limitations related to his musculoskeletal (back and neck) condition and pulmonary disease is without merit. For the reasons set forth above, the evidence simply did not support the debilitating symptoms Plaintiff claimed, and I agree with the Commissioner that the ALJ was

---

[8]As indicated by the Commissioner, although Plaintiff alleged prior cervical and lumbar fusions when being examined by Dr. Adams, there is no other evidence in the record to support this allegation and Plaintiff told Dr. Rozas that he had no prior surgeries (R. 205).

10

not obliged to include the unsupported subjective complaints into his hypothetical. See Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001).

By his remaining claim, Plaintiff contends that despite the VE's testimony to the contrary, there are unexplained inconsistencies between the VE's testimony and the Dictionary of Occupational Titles (hereinafter "DOT").[9] More particularly, Plaintiff alleges that conflicts exist between the VE's testimony and the DOT with respect to the physical requirements of work as a garment sorter, marker, and usher in light of the limitations found by the ALJ, i.e., the inability to do fast fingering (fine manipulation) with his dominant right hand.[10] Thus, Plaintiff claims a conflict between the VE's testimony that he can perform those jobs and the DOT description of the jobs, because according to the DOT: (1) the position of garment sorter requires fingering up to 1/3 of the time and may require ironing, folding and packing;[11] (2) the position of a marker requires frequent fingering and the ability to write efficiently on price tickets or tie, sew, or staple tickets to merchandise, and it may

---

[9] In support thereof, Plaintiff cites to Social Security Ruling (hereinafter "SSR") 00-4p, which provides that adjudicators must identify and obtain a reasonable explanation for any apparent conflicts between a VE's testimony and the DOT before relying on the VE's testimony.

[10] The ALJ determined that Plaintiff "has the residual functional capacity for a restricted range of up to medium work: he can lift up to 50 pounds occasionally and 25 pounds frequently with the right (dominant) hand but cannot do fast fingering (fine manipulation) with that extremity; he also must avoid exposure to temperature extremes or to concentrated levels of pollutants such as noxious dust, fumes or gases." (R. 19). Plaintiff's argument appears to rely only on the inability to do fine manipulation with the right dominant hand.

[11] Plaintiff also alleges that the VE did not give a clear answer as to whether he believed Plaintiff could even perform this job. While I would agree that the VE's testimony is less than clear as to the number of such jobs available to a person of Plaintiff's RFC, a fair reading of his testimony in its entirety indicates that he could still do this type work even though the occupational base would be reduced.

11

require the ability to read English; and (3) the position of usher requires an ability to communicate in English and fingering is occasionally present.  Plaintiff further challenges the ALJ's reliance on the VE's testimony because all of the jobs mentioned by the VE are classified as light in exertion and the ALJ found Plaintiff could perform work classified as medium in exertion.

Upon careful consideration and close review of the hearing transcript, I am unable to agree with Plaintiff that remand on these grounds is warranted.[12]  Plaintiff's first complaint fails because it is based on an incorrect assumption, namely, that Plaintiff is unable to perform *any* amount of fingering (fine manipulation) with his right hand.  The ALJ did not make that finding.  Rather, the ALJ found that Plaintiff could not perform "fast" fine manipulation with his dominant hand.  Moreover, the VE testified that the positions of garment sorter, marker, and usher could be performed with one hand.  As for any language requirement and the marker position, Plaintiff did not allege any specific inconsistencies that existed between the VE's testimony on the matter and the DOT.  Further, upon concluding his questioning of the VE, the ALJ specifically inquired of the VE whether there was any conflict between the VE's testimony and the information appearing in the DOT, to which the VE responded that he did not believe so.  See (R. 296-97).  In light of this exchange, the ALJ was not obliged to make further inquiries in accordance with SSR SSR 00-4p.  Moreover, in this circuit, a VE's testimony "trumps" that of the DOT.  See Jones v. Apfel, 190 F.3d 1224, 1229-30 (holding VE testimony "trumps" that of DOT) (11th Cir. 1999).  Finally, Plaintiff's claim that the ALJ

---

[12]This is not to say, however, that I condone the manner in which the VE's testimony was elicited and/or clarified.  The VE's testimony in this case is particularly rambling, and the ALJ did little to aid the matter.

12

erred by relying on the VE's identification of "light" exertional jobs as opposed to "medium" exertional jobs is unavailing. As noted by the Commissioner, an adjudicator's finding that a claimant can perform medium exertional work also encompasses the ability to perform light and sedentary exertional work. See 20 C.F.R. §404.1567(c).

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the file.

**Done and Ordered** at Tampa, Florida, this 14th day of February 2006.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record